UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Case No. 8:13-bk-08406-MGW
                                                    Chapter 11
Ronald W. DeMasi and
Susan J. DeMasi,

         Debtors.
_____/

Ravi Kondapalli, *et al.*,                          Adv. No. 8:13-ap-00890-MGW

         Plaintiffs,

v.

Ronald W. DeMasi, M.D.,

         Defendant.
_____/

**MEMORANDUM OPINION ON
<u>MOTION TO SUBSTITUTE PLAINTIFF</u>**

Ravi Kondapalli sued Ronald DeMasi to have debts DeMasi allegedly owes to Gulf

Coast Endoscopy Center of Venice, LLC ("GCEC") and Anesthesia Associates of Southwest

Florida, LLC ("Anesthesia Associates") determined to be nondischargeable under Bankruptcy

Code § 523(a)(2). GCEC and Anesthesia Associates had apparently assigned their §523(a)(2)

claim to Kondapalli, a member of both entities. The Court ruled that Kondapalli lacked standing

to bring a § 523(a)(2) claim on behalf of GCEC and Anesthesia Associates since fraud claims are

nonassignable under Florida law. The Court must now decide whether GCEC and Anesthesia

Associates can substitute in as the proper plaintiffs after the deadline for bringing a

dischargeability action has expired.

Under Federal Rule of Civil Procedure 17, substitution should be allowed where the failure to name the proper plaintiff in the original complaint was the result of an understandable mistake. Here, there is no evidence that the assignment by GCEC and Anesthesia Associates was made in bad faith or in an effort to deceive DeMasi. The Court can only conclude that Kondapalli originally sued in his own name because he was unaware that fraud claims are nonassignable under Florida law. Because the failure to name GCEC and Anesthesia Associates was an understandable mistake, the Court concludes that those entities can substitute in as the proper parties, and their substitution will relate back to the original filing of the dischargeability complaint.

## Background[1]

Kondapalli and DeMasi were members of three limited liability companies: GCEC, Anesthesia Associates, and Gulf Coast Digestive Health, LLC. GCEC was formed in 1999 to construct and operate a surgical center, and Anesthesia Associates was formed two years later to provide anesthesia services at the surgical center. Gulf Coast Digestive was a new medical practice Kondapalli and DeMasi (and others) created in 2005. All three entities contracted with Surgical Synergies, Inc. ("SSI"), which was in the business of providing billing and collection services to ambulatory surgical centers.

---

[1] The background of this opinion is taken largely from the findings of fact and conclusions of law entered by the state court in a lawsuit styled *Gulf Coast Digestive, LLC v. Ronald W. DeMasi*, Case No. 2010-CA-9386, Circuit Court, Hillsborough County, Florida. For purposes of this opinion, the Court is assuming those facts are true. The Court is not making any determination whether the DeMasi is collaterally estopped from relitigating these facts.

GCEC initially contracted with SSI to manage the surgery center. Less than two years later, GCEC commissioned an audit that revealed serious discrepancies with SSI's billings. A second audit revealed even more problems. But Dr. DeMasi, who the other members of GCEC put in charge of following up on the audit, covered up SSI's continued problems by not disclosing the results of the second audit and, in fact, stating at a GCEC board meeting that SSI was doing a good job.

Perhaps worse, Dr. DeMasi induced Gulf Coast Digestive to contract with SSI by covering up SSI's billing issues and concealing the fact that he had entered into a business relationship with an SSI subsidiary—Surgical Synergies Endoscopy, LLC. From the outset, Gulf Coast Digestive had issues with SSI's performance. When those issues were discovered, DeMasi actively worked to keep the other members from terminating SSI's contract. Ultimately, Gulf Coast Digestive claimed it suffered substantial damages as a result of SSI's deficient performance.

So Gulf Coast Digestive sued DeMasi in state court for fraud; breach of the duties of care, loyalty, and good faith; and for breach of the operating agreement. The parties tried the case before the state court, and the state court ultimately entered a $205,714.47 judgment in favor of Gulf Coast Digestive on those counts.[2] After the state court entered judgment in Gulf Coast Digestive's favor, GCEC and Anesthesia Associates sued DeMasi for essentially the same claims based largely on the same operative facts.

All of that litigation eventually forced DeMasi to file for chapter 11 bankruptcy. Once he did so, DeMasi removed the lawsuit that GCEC and Anesthesia Associates filed against him to

---

[2] Gulf Coast Digestive had also asserted a count for deceptive and unfair trade practices. The state court ruled in favor of DeMasi on that count.

this Court.[3] In the meantime, GCEC and Anesthesia Associates apparently assigned any dischargeability claims they had to Kondapalli, and Kondapalli (as the assignee of GCEC and Anesthesia Associates) sued to have the debt owed to them—based on DeMasi concealing SSI's billing discrepancies and his relationship with SSI's subsidiary—determined to be nondischargeable under § 523(a)(2), (a)(4), and (a)(6).[4]

DeMasi moved to dismiss the removed state court action and the dischargeability proceeding filed by Kondapalli (as assignee of GCEC and Anesthesia Associates).[5] This Court denied DeMasi's motion to dismiss the removed state court action.[6] But the Court granted the motion to dismiss the § 523(a)(4) and (a)(6) counts that Kondapalli filed on behalf of GCEC and Anesthesia Associates in this dischargeability proceeding.[7] As for the remaining count Kondapalli filed under § 523(a)(2), the Court ruled that he stated a cause of action but nevertheless dismissed the count because Kondapalli lacked standing to assert that claim as the assignee of GCEC and Anesthesia Associates since § 523(a)(2) claims are nonassignable.[8]

Rather than dismiss the § 523(a)(2) claim with prejudice, however, the Court provided that dismissal was with leave for GCEC and Anesthesia Associates to substitute in as the proper parties.[9] In fact, Kondapalli's counsel argued at the hearing on the motions to dismiss that Kondapalli could simply avoid the assignability issue by substituting GCEC and Anesthesia

---

[3] Gulf Coast Endoscopy Center of Venice, LLC, et al. v. DeMasi, Adv. No. 8:13-ap-00858-MGW.

[4] Adv. Doc. No. 1.

[5] Adv. No. 13-ap-858, Doc. No. 15.

[6] Adv. No. 13-ap-858, Doc. No. 24.

[7] Adv. Doc. No. 12 at 2-3.

[8] *Id.* at 3-4.

[9] *Id.*

Associates in as the real parties in interest, and counsel for DeMasi did not raise any objection to that contention.[10] In any event, GCEC and Anesthesia Associates moved to substitute in as the real parties in interest after the deadline for filing dischargeability proceedings has passed,[11] and DeMasi has objected to the proposed substitution.[12]

In his objection, DeMasi raises two separate grounds for opposing substitution: First, as a preliminary matter, DeMasi says this Court did not have subject matter jurisdiction over the original claims because Kondapalli did not have standing to pursue them. So this Court cannot now substitute GCEC and Anesthesia Associates in to pursue those claims. Second, on the merits, GCEC and Anesthesia Associates are not entitled to substitute in under Rule 17—the rule governing the substitution of real parties in interest—because the failure to bring this proceeding in their name originally was not the result of an understandable mistake. DeMasi is wrong on both counts.

## Conclusions of Law[13]

### *The Court has subject matter jurisdiction over the original claims*

In support of his first point (i.e., that the Court lacked jurisdiction over the original claims), DeMasi relies on *Live Entertainment, Inc. v. Digex, Inc.*[14] There, Live Entertainment sued Digex for amounts due under a partnership agreement between Digex and Maverick Digital. Digex moved for summary judgment because Live Entertainment was neither a party to the

---

[10] Doc. No. 25 at 72-103.

[11] Adv. Doc. No. 17.

[12] Adv. Doc. Nos. 18 & 29.

[13] This Court has jurisdiction over this contested matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

[14] Doc. No. 18 (citing *Live Entm't, Inc. v. Digex, Inc.*, 300 F. Supp. 2d 1273 (S.D. Fla. 2003)).

agreement or a lawful assignee of it. Live Entertainment conceded it lacked standing to pursue the contract claim but sought permission to substitute Maverick in as the real party in interest. The district court ruled that Live Entertainment was not entitled to substitute Maverick in as the real party in interest since Live Entertainment had no standing to bring the action in the first place.[15]

This case is distinguishable from *Live Entertainment*—the case principally relied on by DeMasi—in two critical respects. First, Kondapalli, unlike Live Entertainment, never conceded he lacked standing to bring this proceeding.[16] Live Entertainment had no choice but to concede it lacked standing since a state court had determined that the assignment—the sole basis for standing—was invalid nearly three years before Live Entertainment sued Digex.[17] Second, in this case—unlike in *Live Entertainment*—there is a substantial identity of interests between the original plaintiff and the real party in interest. Because of the second distinction (i.e., the substantial identity of interests), this Court concludes this case is governed by the Eleventh Circuit Court of Appeal's decision in *Delta Coal Program v. Libman*—a case cited by the *Live Entertainment* court for the proposition that subject matter jurisdiction existed even where the original party lacked standing.[18]

The facts in *Delta Coal* are highly analogous to those in this case. In *Delta Coal*, Kentucky Eastern Coal Company sold a mining claim to 37 individuals, including Paul Crum

---

[15] 300 F. Supp. 2d at 1279-1280.

[16] It is worth noting that the Court never determined that Kondapalli lacked standing to bring the claims under § 523(a)(4) or (a)(6). The Court simply dismissed those claims because Kondapalli failed to state a cause of action.

[17] *Live Entm't*, 300 F. Supp. at 1276-77.

[18] *Id.* at 1278-79 (citing *Delta Coal Program v. Libman*, 743 F.2d 852 (11th Cir. 1984)).

and Mark Leonard.[19] Crum and Leonard then created Delta Coal, a limited partnership consisting of the 37 investors, to hold the mining claim for tax benefits.[20] As it turns out, the mining claim was not as extensive as the investors had been led to believe. So Crum and Leonard, along with Delta Coal, sued Kentucky Eastern and a company called Universal Heritage Investments Corporation (as well as others) under federal securities law.[21] On motion of the defendants, the district court determined that Delta Coal did not have standing to pursue the securities law claims since those claims were held by the 37 investors individually.

But the district court gave the individual investors leave to substitute in as the real parties in interest. And the investors, in fact, did so. They filed an amended complaint asserting the very same claims Delta Coal previously asserted.[22] Universal appealed the district court ruling allowing the individual investors to substitute in as the proper plaintiffs. On appeal, Universal raised the very same issue DeMasi raises here—namely, that the district court lacked the authority to permit substitution because it lacked subject matter jurisdiction over the original claims since Delta Coal did not have standing to bring them.[23]

The Eleventh Circuit initially rejected that argument because none of the statutes that Delta Coal brought its claims under required that the party possessing the enforceable right be named as a plaintiff.[24] Two of the statutes at issue conferred jurisdiction over violations of federal securities laws; the third statute conferred jurisdiction over violations of another federal

---

[19] *Delta Coal*, 743 F.2d at 853.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 854.

[23] *Id.*

[24] *Id.* at 855-56.

statute.[25] But even if naming the proper party was a requirement under the statutes at issue, the

Eleventh Circuit nevertheless concluded a district court does not lack subject matter jurisdiction

where there is a substantial identity between the original plaintiff and the real party in interest:

> A district court does not exceed its power when it takes jurisdiction
> over a controversy, even if not brought by the real party in interest,
> as long as there exists substantial identity of interest between the
> original plaintiff and the true party in interest, and as long as the
> pleadings set forth the facts upon which the real party would base
> its invocation of the court's jurisdiction in its own right.[26]

Here, like in *Delta Coal*, there is a substantial identity of interest between the original

plaintiff and the true party in interest. In *Delta Coal*, a partnership was attempting to bring claims

belonging to the individual partners. In this case, a member was trying to assert a claim that

belonged to a limited liability company. Also like in *Delta Coal*, the pleadings here set forth the

factual allegations that the real party in interest's claims are based on. As a consequence, this

Court has jurisdiction over this proceeding regardless of whether Kondapalli lacked standing to

assert the § 523(a)(2) claim.

*Substitution should be permitted under Rule 17(a)*

Under Rule 17, the Court may not dismiss a complaint for failure to prosecute in the

name of the real party in interest unless it allows a reasonable time for the real party in interest to

substitute in as the plaintiff.[27] Substitution is permitted after the statute of limitations has run.[28]

In those cases, substitution of the real party in interest relates back to the date the original

---

[25] *Id.* at 855.

[26] *Id.* at 856.

[27] Fed. R. Civ. P. 17(a)(3). Federal Rules of Bankruptcy Procedure Rule 7017 applies Federal Rule of Civil Procedure 17 in adversary proceedings.

[28] Fed. R. Civ. P. 17(a)(3); *Hess v. Eddy*, 689 F.2d 977, 980 (11th Cir. 1982), *abrogated on other grounds* by *Wilson v. Garcia*, 471 U.S. 261 (1985).

complaint was filed.[29] Substitution, however, is limited to cases where it was difficult to determine who the real party in interest was or where the failure to name the real party in interest as a plaintiff initially was the result of an honest or understandable mistake.[30]

As GCEC and Anesthesia Associates point out, courts have routinely permitted substitution under Rule 17 where the original plaintiff is determined not to be the real party in interest because of an invalid assignment of the claim asserted by the plaintiff.[31] In the two main cases cited by Kondapalli—*Advanced Magnetics* and *Cibran Enterprises*—the change in parties was merely formal in nature and did not alter the claims being pursued or the factual allegations underlying them. Based on that same reasoning, at least one court has specifically authorized substitution under Rule 17 in a dischargeability action where the original plaintiff was not the real party in interest even though the Rule 4007 limitations period had expired.[32]

In *Meyer*, Far West Commercial Finance sued to have a debt arising out of a loan agreement it had with Hydro-Dynamics (which the debtor was an officer of) determined nondischargeable. Commercial Finance had previously assigned the loan with Hydro-Dynamics to its parent institution, but it retained the right to service the loan.[33] The debtor apparently fraudulently induced Commercial Finance to make the loan to Hydro-Dynamics and then further

---

[29] *Hess*, 689 F.2d at 980; *see also* 4 James Wm. Moore, et al. Moore's Federal Practice ¶ 17.12[1][b] (Matthew Bender 3d. 2010) (citing *Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Mgmt.*, 620 F.2d 1, 3 n.2 (1st Cir. 1980); *Corbin v. Blakenburg*, 39 F.3d 650, 654 (6th Cir. 1994); *Cummings v. United States*, 704 F.2d 437, 439-40 (9th Cir. 1983)).

[30] Fed. R. Civ. P. 17 advisory committee's note (explaining that Rule 17 was "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made"); *see also Live Entm't, Inc. v. Digex, Inc.*, 300 F. Supp. 2d 1273, 1276 (S.D. Fla. 2003).

[31] Adv. Doc. No. 19 at 2-5 (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997); *Cibran Enters., Inc. v. B.P. Prods. N. Am., Inc.*, 365 F. Supp. 2d 1241, 1252 (S.D. Fla. 2005)).

[32] *FDIC v. Meyer (In re Meyer)*, 120 F.3d 66, 69 (7th Cir. 1997).

[33] *Id.* at 68.

defrauded it by keeping the scheme going. By the time the debtor filed for bankruptcy, Resolution Trust Corporation ("RTC") was actually the real party in interest.[34]

When the debtor point that out, the bankruptcy court allowed RTC to substitute in as the plaintiff even though the deadline under Rule 4007 for filing a dischargeability action had expired.[35] Ultimately, the bankruptcy court determined that RTC's debt was nondischargeable.[36] The debtor then appealed the entry of final judgment in favor of RTC and, on appeal, argued that any claim by RTC was time barred since RTC had not been substituted in until after the Rule 4007 deadline had expired.[37]

The Seventh Circuit disagreed, holding that allowing RTC to substitute in after the Rule 4007 deadline did not defeat the rule's purpose.[38] Because a discharge is intended to give debtors a fresh start from all but a certain category of debts, the court concluded it is the nature of the debt—not the person asserting it—that is the critical factor under Rule 4007: "The force of Rule 4007(c) therefore should fall first and foremost on whether a complaint was filed against a specific debt, not so much on who makes the complaint."[39] In *Meyer*, the debtor knew some creditor in the "daisy chain" would be challenging the dischargeability of the debt arising out of the loan agreement. As the Seventh Circuit aptly put it: "Better that the right entity file the

---

[34] *Id.*

[35] *Id.* at 68.

[36] *Id.* at 67.

[37] *Id.* at 68.

[38] *Id.*

[39] *Id.* at 68.

request for non-discharge in time under § 523(c); but if the wrong related entity files for the same debt, a bankruptcy judge is not obliged to toss the request out of court."[40]

The Debtor attempts to distinguish *Meyer* by arguing that the Seventh Circuit's decision in that case was based on the fact that the creditor's conduct conformed to industry standard. Here, DeMasi contends, Kondapalli's conduct did not. The Court is not convinced that *Meyer* turned on whether the assignment conformed to some industry standard. Whether assignments were commonplace in the banking industry was relevant, if anything, to whether the debtor was on notice that someone may be claiming the debt was nondischargeable. The fact that assignments may not be commonplace in this context does not undermine the applicability of *Meyer* to the facts of this case. It is plainly apparent from the facts of this case that DeMasi was aware someone would be challenging the dischargeability of the debt owed to GCEC and Anesthesia Associates, so the purpose of Rule 4007 has been served here.

That brings the Court to DeMasi's last argument: the Court should not allow substitution because this was an obvious attempt by Kondapalli to gain a tactical advantage. Like the Second Circuit explained in *Advanced Magnetics*, the fact that a creditor's conduct in suing as an assignee was strategic or tactical does not preclude substitution under Rule 17:

> Although the district court characterized AMI's assertion of the shareholders' claims as "tactical" and "strategic," . . . those characterizations do not make Rule 17 inapplicable. The attempted assignment was a tactic meant to allow AMI to sue as assignee of the selling shareholders; but assignments are not impermissible. There plainly was a mistake as to the legal effectiveness of the documents to permit AMI to sue as assignee. However, the court did not refer to any evidence suggesting that the mistake itself was deliberate or tactical, and we have been pointed to no evidence that would indicate that the attempted assignments were undertaken in bad faith or in an effort to deceive or prejudice the defendants.[41]

---

[40] *Id.* at 69.

[41] *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20-21 (2d Cir. 1997)

As in *Advanced Magnetics*, there is no evidence here that the mistake regarding the assignability of § 523(a)(2) claim was deliberate or tactical or that the assignment was undertaken in bad faith or in an effort to deceive or prejudice DeMasi.

### Conclusion

"Better that the right entity file the request for non-discharge in time under § 523(c); but if the wrong related entity files for the same debt, a bankruptcy judge is not obliged to toss the request out of court."[42] Here, the wrong entity filed the dischargeability proceeding. But the failure of the real party in interest to file the proceeding was an understandable mistake. And because DeMasi was put on notice that someone was claiming the debt owed to GCEC and Anesthesia Associates is nondischargeable, he is not prejudiced by allowing those entities to substitute in as the real parties in interest. Accordingly, the Court will enter a separate order granting their request to substitute in as the plaintiffs in this proceeding under Rule 17.

**DATED**:  August 18, 2014

Michael G. Williamson
United States Bankruptcy Judge

Attorney Stuart Levine is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

---

[42] *Meyer*, 120 F.3d at 69.

**Stuart J. Levine, Esq.**
**Heather A. DeGrave, Esq.**
    **Walters, Levine, Klingensmith & Thomison**

**Zala L. Forizs, Esq.**
    **McIntyre, Panzarella, Thanasides, et al.**
*Counsel for Ravi Kondapalli*

**David S. Jennis, Esq.**
**Kathleen L. DiSanto, Esq.**
    **Jennis & Bowen**
*Counsel for Ronald W. DeMasi*