UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:  
                                                               Case No. 8:13-bk-08406-MGW  
                                                               Chapter 11

Ronald W. DeMasi and  
Susan J. DeMasi,

      Debtors.  
_____/

Gulf Coast Endoscopy Center of                       Adv. No. 8:13-ap-00890-MGW  
Venice, LLC, *et al.*

      Plaintiffs,

v.

Ronald W. DeMasi, M.D.,

      Defendant.  
_____/

**MEMORANDUM OPINION ON**
**<u>RECONSIDERATION OF SUBSTITUTION ORDER</u>**

This Court previously ruled that Gulf Coast Endoscopy Center of Venice ("GCEC") and Anesthesia Associates of Southwest Florida ("Anesthesia Associates") could substitute in for Ravi Kondapalli—a member of both companies—as the proper party in this nondischargeability proceeding under Bankruptcy Code § 523(a)(2). Ronald DeMasi, one of the Debtors, says the Court must reconsider its ruling because this Court (i) overlooked a recent Eleventh Circuit decision standing for the proposition that substitution was too late; (ii) improperly shifted the burden to him to prove that the failure to name GCEC and Anesthesia Associates in the first place was the result of an honest or understandable mistake; and (iii) must consider "newly

discovered" evidence showing that the other members of GCEC and Anesthesia Associates do not consent to the companies substituting into this proceeding.

The Court concludes reconsideration is not warranted. For starters, the recent Eleventh Circuit decision—*Coquina Investments v. TD Bank*—is easily distinguishable from this case and does not constitute a change in the controlling law. Moreover, the Court did not require DeMasi to prove the failure to name GCEC and Anesthesia Associates was an honest or understandable mistake; on the face of the record, an honest or understandable mistake is the only plausible explanation. Finally, DeMasi does not have a right—or, for that matter, any need—to the discovery he claims he was denied. Accordingly, DeMasi's motion for reconsideration will be denied.

## Background

There is no reason to relate the facts of this proceeding in any great detail. Suffice it to say, GCEC and Anesthesia Associates sued DeMasi in state court for fraud.[1] After DeMasi filed for bankruptcy, he removed the state court fraud action to this Court.[2] A week later, Kondapalli, as the assignee of GCEC and Anesthesia Associates, filed this proceeding seeking to have the debt DeMasi owes the companies determined nondischargeable under § 523(a)(2).[3] The initial nondischargeability complaint was based on virtually the same facts as the state court fraud action GCEC and Anesthesia Associates filed against DeMasi.[4]

---

[1] Adv. No. 13-ap-00858-MGW, Adv. Doc. No. 1-2.

[2] Adv. No. 13-ap-00858-MGW, Adv. Doc. No. 1.

[3] Adv. Doc. No. 1.

[4] *Id.*; Adv. No. 13-ap-00858-MGW, Adv. Doc. No. 1-2.

This Court, in ruling on a motion to dismiss filed by DeMasi, concluded that Kondapalli stated a claim under § 523(a)(2) but nonetheless dismissed the complaint for lack of standing because the assignment of the § 523(a)(2) claim to Kondapalli was invalid under Florida law.[5] GCEC and Anesthesia Associates then moved to substitute in as the real parties in interest.[6] DeMasi objected because the substitution request came after the deadline for bringing nondischargeability actions expired.[7] This Court permitted GCEC and Anesthesia Associates to substitute in as the real parties in interest.[8]

Under Rule 17, substitution should be allowed after the limitations period has expired where the failure to name the proper plaintiff in the original complaint was the result of an understandable mistake.[9] Here, the Court concluded there was no evidence in the record that the failure to name GCEC and Anesthesia Associates in the first place was anything other than an honest or understandable mistake.[10] Besides, in dischargeability proceedings, it is the nature of the debt—not the person asserting it—that is the critical factor under Rule 4007(c):

> The force of Rule 4007(c) therefore should fall first and foremost on whether a complaint was filed against a specific debt, not so much on who makes the complaint.[11]

---

[5] Adv. Doc. No. 12 at 3-4.

[6] Adv. Doc. No. 17.

[7] Adv. Doc. No. 18.

[8] Adv. Doc. No. 31. This Court's memorandum opinion on substitution was reported at 2014 WL 4071664 (Bankr. M.D. Fla. Aug. 18, 2014).

[9] *DeMasi*, 2014 WL 4071664, at * 4.

[10] *Id.* at *6.

[11] *Id.* at *5 (quoting *FDIC v. Meyer (In re Meyer)*, 120 F.3d 66, 68 (7th Cir. 1997)).

**Conclusions of Law**

DeMasi now asks the Court to reconsider its ruling for three reasons: First, DeMasi says this Court overlooked the Eleventh Circuit recent decision in *Coquina Investments v. TD Bank*, which Dr. DeMasi says stands for the proposition that substitution in this case was too late. Second, DeMasi says the Court improperly shifted the burden to him to prove that the failure to name GCEC and Anesthesia Associates in the first place was the result of an honest or understandable mistake. Third, Dr. DeMasi says he should be given the opportunity to take discovery to show that the other members of GCEC and Anesthesia Associates do not consent to the companies substituting into this proceeding.[12] None of DeMasi's arguments have merit.

The Eleventh Circuit's decision in Coquina<br><u>Investments does not warrant a different result</u>

In *Coquina Investments*, the Eleventh Circuit held that the district court did not abuse its discretion in denying a plaintiff leave to amend its complaint.[13] In that case, Coquina Investments sued TD Bank under a civil RICO statute.[14] Coquina Investments' RICO claim was based on a closed pattern of racketeering activity. TD Bank moved to dismiss the RICO claim because Coquina Investments failed to sufficiently plead a closed pattern of activity. The district court denied TD Bank's motion to dismiss Coquina Investments' RICO claim but later granted summary judgment in favor of TD Bank on that claim. After the district court granted summary

---

[12] Adv. Doc. No. 34. DeMasi actually raises a fourth argument—namely, that he did not waive any objection to substitution. That argument is based on a statement in this Court's memorandum opinion on substitution that DeMasi did not raise any objection to Kondapalli's counsel's argument that he could simply substitute in GCEC and Anesthesia Associates in the event the Court was inclined to dismiss his complaint. DeMasi refutes the Court's characterization that he did not object. Whether the portion of the transcript DeMasi relies on refutes this Court's statement, the fact is the statement by the Court in its memorandum opinion had no bearing on its ruling. So there is no need for the Court to address DeMasi's fourth argument.

[13] 760 F.3d 1300, 1321-22 (11th Cir. 2014).

[14] *Id.* at 1321.

judgment, Coquina Investments sought to amend its complaint to include an open-ended pattern of racketeering activity, which the district court denied.[15]

On appeal, the Eleventh Circuit agreed with the district court that the proposed amendment was unduly delayed.[16] According to the Eleventh Circuit, Coquina Investments was on notice by June 2011 that its closed-ended RICO theory was fatally flawed.[17] By that time, Coquina Investments was also on notice that it had not alleged an open-ended theory in its complaint to save its RICO claim in the event its closed-ended theory failed.[18] Yet, Coquina Investments inexplicably waited four months—until after summary judgment and immediately before trial—to try to add the open-ended RICO theory.[19] The takeaway, according to Dr. DeMasi, is that a party that fails to timely act when notified of a pleading defect is barred from doing so later.

And DeMasi contends that is what happened here. He says GCEC and Anesthesia Associates were on notice of the fact that the assignment of the fraud claim was invalid more than a year before they tried to substitute in. So DeMasi says *Coquina Investments* dictates that substitution was untimely, and since the Eleventh Circuit's ruling was issued after the hearing on the substitution motion and shortly before this Court issued its memorandum opinion, DeMasi says that case is an intervening change of law that warrants reconsideration.

But *Coquina Investments* is plainly distinguishable from this case. The most obvious distinction is that it involves a request to amend a complaint under Rule 15 rather than a request

---

[15] *Id.* at 1321-22.

[16] *Id.* at 1322.

[17] *Id.* at 1321-22.

[18] *Id.*

[19] *Id.*

to substitute parties under Rule 17. Even more significant, *Coquina Investments* did not involve a dischargeability proceeding, which, as courts have noted, is more concerned with the nature of the debt than the person asserting it is nondischargeable. On top of that, the timing consideration is critical. It is true that both *Coquina Investments* and this proceeding involve parties who arguably delayed remedying a pleading defect. But the corrective action in *Coquina Investments* came after summary judgment and shortly before trial, whereas the corrective action here came at the outset of the case. So there is no prejudice to DeMasi—other than losing the ability to defeat this nondischargeability claim on a technicality. For those reasons, *Coquina Investments* does not govern this case. It is, of course, persuasive authority, although the Court finds it is not as instructive as to the narrow issue that was before the Court previously, and it certainly does not warrant reconsideration of this Court's ruling on substitution.

This Court did not improperly shift the burden to DeMasi

DeMasi's argument that the Court improperly shifted the burden to him to prove the failure to name GCEC and Anesthesia Associates initially was the result of an understandable mistake is based on two faulty assumptions. First, DeMasi basically assumes that GCEC and Anesthesia Associates could only meet their burden by attesting in an affidavit or otherwise: "The invalid assignment was a mistake." Second, DeMasi assumes that any strategic purpose on the part of Kondapalli automatically precludes a finding that the failure to name GCEC and Anesthesia Associates originally was an understandable mistake. DeMasi would have a point if both assumptions were correct, but they are not.

This Court could easily conclude from the record that the failure to properly name GCEC and Anesthesia Associates was an honest and understandable mistake. After all, the record reflects that: the nondischageability claim belonged to GCEC and Anesthesia Associates;

Kondapalli was a member of both of those closely held companies; and Kondapalli, DeMasi, and entities they held common ownership interest in with others were already involved in two complex state court cases, and more litigation appeared on the horizon with DeMasi filing for bankruptcy. It is not unreasonable to infer, from that record, that the other members of GCEC and Anesthesia Associates had no interest in becoming embroiled in what was clearly evolving into a bitter dispute between DeMasi and Kondapalli in this bankruptcy case. Add to the fact that the general rule in Florida is that claims are assignable and that an attorney—the one representing GCEC and Anesthesia Associates in this proceeding—prepared the assignment after researching Florida law.[20] That attorney—arguing against the original motion to dismiss in this proceeding—conceded personal tort claims are nonassignable but argued that there is no case in Florida holding that a fraud claim is a nonassignable personal tort claim.[21]

     But DeMasi insists those facts are not enough for GCEC and Anesthesia Associates to meet their burden and that the Court must instead conclude the assignment was a strategic litigation decision. What was the strategy behind naming Kondapalli instead of GCEC and Anesthesia Associates? Well, DeMasi never quite says. In fact, it appears DeMasi does not know the alleged strategic reason. The best he can do is guess. He speculates it might have something to do with other members being unwilling to engage in dischargeability litigation.[22] Or perhaps it had something to do with not wanting any nondischargeable debt to be reduced in half to account for Kondapalli's interest in GCEC and Anesthesia Associates.[23] Whatever the reason, DeMasi knows it could not have been a mistake because GCEC and Anesthesia Associates sued DeMasi

---

[20] Adv. Doc. No. 25 at 29.

[21] *Id.* at 29-34.

[22] Adv. Doc. No. 18 at ¶ 2.

[23] *Id.*

in their own name in state court but Kondapalli brought the nondischargeability proceeding here based on the same conduct.[24]

It is not clear how that last point makes the case that the failure to name GCEC and Anesthesia Associates was strategic or somehow inconsistent with a mistake. In any event, while some cases do refuse to permit substitution where the failure to name the proper plaintiff was the result of a tactical decision,[25] this Court is guided by the Second Circuit Court of Appeal's decision in *Advanced Magnetics*, where the court held that characterizing conduct as "tactical" or "strategic" does not render Rule 17 inapplicable.[26] In *Advanced Magnetics*, the Second Circuit noted that an assignment was a "tactic" to allow a company to sue as the assignee of certain selling shareholders but held that there was plainly a mistake as to the legal effectiveness of the assignment documents.[27]

This Court essentially concluded the same thing here. From the undisputed facts, it is plain GCEC and Anesthesia Associates made an honest and understandable mistake regarding the effectiveness of the assignment. And like in *Advanced Magnetics*, there was no reason for this Court to conclude that the mistake was deliberate or tactical. So this Court did not shift the burden to DeMasi to disprove the failure to name GCEC and Anesthesia Associates.

<u>DeMasi is not entitled to conduct discovery</u>

There is a sort of irony to DeMasi's argument that he needs an opportunity to conduct discovery. On the one hand, he says Kondapalli cannot substitute in as the proper party because he delayed too long after first becoming aware of the alleged standing issue. On the other hand,

---

[24] *Id.* at ¶ 23.

[25] *See, e.g., Metal Forming Techs., Inc. v. Marsh & McLennan Co.*, 224 F.R.D. 431, 436-38 (S.D. Ind. 2004).

[26] 106 F.3d 11, 20 (2d Cir. 1997).

[27] *Id.* at 20-21.

the Debtor has waited even longer—well after Kondapalli filed his motion to substitute and the Court ruled on it—to seek discovery. Putting that aside, DeMasi's claim that he needs to take discovery does not warrant reconsideration.

To be sure, newly discovered evidence, in some instances, can be grounds for reconsideration provided it would have warranted a different outcome.[28] The problem is that DeMasi fails to point to any newly discovered evidence. The closest he comes is his allegation that counsel for one unnamed member of GCEC and Anesthesia Associates confided in DeMasi's counsel after this Court issued its Memorandum Opinion on substitution that his client does not wish to be drawn into the litigation and that his client "does not appear" to support substitution. If the Court understands DeMasi's argument correctly, he should be permitted to conduct discovery based on an allegation that an unnamed lawyer for an unnamed member does not appear to support substitution.

But that does not warrant reconsideration because DeMasi must show that he could not have discovered the evidence with due diligence[29] and that the evidence would have merited a different result.[30] DeMasi cannot make either showing. He fails to explain why he failed to conduct discovery (or at least seek leave to conduct discovery) on that issue. That issue would have been obvious given the facts of this case. And in any case, it is not clear how the fact that one member (maybe others) may not support substitution changes this Court's conclusion that the failure to name GCEC and Anesthesia Associates in the first place was an honest and

---

[28] *In re Fundamental Long Term Care, Inc.*, 493 B.R. 620, 624 (Bankr. M.D. Fla. 2013).

[29] *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1274 (11th Cir. 2014); *Chesnut v. Ethan Allen Retail, Inc.*, 17 F. Supp. 3d 1367, 1372 (explaining that the "Eleventh Circuit is clear that 'newly discovered evidence' for purposes of Rule 59(e) is evidence that could not have been presented before the judgment was entered").

[30] *JAS Forwarding (USA), Inc.*, 747 F.3d at 1274; *Fundamental Long Term Care*, 493 B.R. at 624.

understandable mistake. There is no basis for allowing DeMasi to go on a fishing expedition—after this Court has ruled—in hopes he will find new evidence that could support reconsideration.

**Conclusion**

This Court previously ruled that GCEC and Anesthesia Associates could substitute in as the proper party because the failure to name them in the first place was the result of an honest and understandable mistake. For this Court to reconsider its previous ruling, DeMasi must demonstrate that: (i) controlling law has changed; (ii) newly discovered evidence would merit a different result; or (iii) reconsideration is necessary to correct a clear error of law or fact or to prevent a manifest injustice.[31] Because DeMasi failed to allege any of the grounds for reconsideration, the Court will enter an order denying his motion.

**DATED**: March 31, 2015

 Michael G. Williamson
 United States Bankruptcy Judge

Attorney Stuart Levine is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

---

[31] *Fundamental Long Term Care*, 493 B.R. at 624